UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| REGINA GONZALEZ, | ) | No. ED CV 06-00304-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified Administrative Record ("AR"). After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

Plaintiff's first and second issues are related. In the first

issue, she questions whether the Administrative Law Judge ("ALJ") properly considered her mental impairment to be severe. Her second issue concerns the asserted error in the rating of her mental impairment. In order to provide a context to the Court's analysis of the mental impairment issues, a brief summary of applicable law will first be set forth.

### A. Applicable Law.

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1) and §416.920a(e)(1) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding
(continued...)

2

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension.  Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.  Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

In 20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3), four broad functional areas are identified by which to rate the degree of functional limitation.  These are ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation.

Pursuant to the September 2000 amendments to the regulations

---

[1](...continued)
appropriately to supervision, co-workers, and work pressures in a work setting."

3

1  which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ
2  is no longer required to complete and attach a PRTF.  The revised
3  regulations provide categories for the first three of these four
4  functional areas.  These categories are None, Mild, Moderate, Marked,
5  and Extreme. (§404.1520a(c)(4)).  In the decision, the ALJ must
6  incorporate pertinent findings and conclusions based on the PRTF
7  technique. §404.1520a(e)(2) mandates that the ALJ's decision must show
8  "the significant history, including examination and laboratory
9  findings, and the functional limitations that were considered in
10 reaching a conclusion about the severity of the mental impairment(s).
11 The decision must include a specific finding as to the degree of
12 limitation in each of the functional areas described in paragraph (c)
13 of this section."

**B.  Analysis**.

At the administrative hearing, testimony was taken from a medical expert ("ME"), Dr. Rath, who testified that Plaintiff has a moderate limitation in maintaining social functioning. (AR 690.)  Plaintiff notes that the ALJ did not mention this moderate limitation in her decision, and in particular, failed to find that Plaintiff has a severe mental impairment. (See AR at 19, Finding 2.)

In her Reply, the Commissioner asserts that the ALJ treated the mental impairment as severe, but simply failed to use the word "severe" to describe her mental impairment. (See Joint Stipulation ["JS"] at 5.)

It is clear that the ALJ adopted the ME's testimony as to Plaintiff's limitations in the area of mental impairment. (see AR at 19, Finding 5, and testimony at AR 692.)  Whether or not the ALJ

1  mentioned the ME's testimony in her decision is of no moment, because
2  the ME's functional limitations were adopted, and Plaintiff does not
3  dispute the correctness of that testimony.  At most, the ALJ's failure
4  to specifically identify Plaintiff's mental impairment as severe is
5  harmless error, which would not entitle Plaintiff to a remand.  <u>See</u>
6  <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir. 1990)(harmless error
7  rule applies to review of administrative decisions regarding
8  disability); <u>Booz v. Secretary of Health and Human Services</u>, 734 F.2d
9  1378, 1380-81 (9th Cir. 1984)(same).

10     In Plaintiff's second issue, she asserts that the ALJ failed to
11  undertake the proper rating of Plaintiff's mental impairment, as
12  required by the applicable regulations, which the Court has summarized
13  in the preceding section.  Plaintiff correctly notes that the ALJ must
14  rate her functional limitations in four pertinent areas.  Certainly,
15  that did not occur in the decision, but the question is whether this
16  constitutes reversible error.  The Court concludes that it does not,
17  for the same reason as to issue one; that is, any error must be
18  considered harmless.  The ALJ adopted the ME's testimony as to
19  Plaintiff's mental restrictions, and the ME specifically testified as
20  to each of the four functional areas, and rated them according to the
21  appropriate scale. (<u>See</u> AR at 19, 688-690.)  Therefore, by
22  incorporating the ME's functional limitations into the findings, and
23  in particular, the assessment of Plaintiff's residual functional
24  capacity ("RFC"), the ALJ committed at most harmless error.  Further,
25  Plaintiff benefitted from the ALJ's adoption of the ME's assessment,
26  because the record does contain a PRTF which indicates Plaintiff had
27  no severe mental impairment as of the amended onset date (<u>see</u> AR at
28  382, 431, 689).  In addition, an examining psychiatrist, Dr. Smith,

found that Plaintiff only had mild limitations in her ability to interact with supervisors or co-workers, and did not have a serious mental impairment. (AR at 413-419.)

For the foregoing reasons, Plaintiff's first and second issues are found to be unmeritorious.

Plaintiff's third and final issue concerns a contention that the ALJ did not properly consider lay witness testimony. In particular, Plaintiff references a third party questionnaire of Mr. Rincon. (AR 146-151.) Preliminarily, the Court notes that Mr. Rincon's answers to the questionnaire would appear to be contradictory. In response to question 1, he asserts that Plaintiff is homeless and that he lets her stay in his room when he is away. In response to question 2, Mr. Rincon asserts that Plaintiff both lives alone and with family. (See AR at 146.) In any case, Plaintiff asserts that the ALJ's failure to discuss Mr. Rincon's questionnaire constitutes reversible error, primarily citing the Ninth Circuit's decision in <u>Nguyen v. Chater</u>, 100 F.3d 1462 (9th Cir. 1996).

The ALJ is not required to discuss evidence that is neither significant nor probative. For example, in <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003), the plaintiff asserted error because the ALJ failed to acknowledge a medical review from a long-term care service which found that Plaintiff had problems with motor coordination, adaptive functioning and communication that would necessitate physical, occupational and speech therapy. The Ninth Circuit found that the ALJ's failure to discuss this evidence was not error, because it was neither significant nor probative. (See 341 F.3d at 1012.) Similarly, in this case, despite the fact that on its face, the questionnaire responses would seem to indicate that Mr. Rincon is

unfamiliar with Plaintiff's condition, even if he were, the primary issues discussed in the questionnaire answer concern Plaintiff's physical condition. The ALJ's determination of Plaintiff's severe impairments incorporates those areas referenced in Mr. Rincon's questionnaire. For example, the ALJ found that Plaintiff has degenerative joint disease of the lumbar spine with low back pain. (See AR at 19, Finding 2.) In response to a question as to whether Plaintiff ever has problems with concentrating or remembering, Mr. Rincon indicated in the affirmative, offering that, "It is hard for her to remember things." This conclusory statement cannot be considered significant or probative, because there was extensive psychiatric evidence in the record concerning, among other things, Plaintiff's ability to concentrate. The Court has referenced Dr. Smith's consultative examination, which the ALJ considered, in which no limitations were found in areas related to concentration, among other mental functional assessments. (See AR at 419.) Mr. Rincon's conclusory statement, based on apparently limited knowledge of Plaintiff, does not begin to rise to the level of substantial or probative evidence which would contradict that of an examining psychiatrist. Moreover, Plaintiff herself has endorsed the testimony of the ME, who asserted that any difficulty in concentration would be mild. (See JS at 3, AR at 690.) Plaintiff cannot have it both ways.

For the foregoing reason, the Court finds no merit in Plaintiff's third issue.

//
//
//
//

The Decision of the Commissioner will be affirmed, and the matter will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: January 8, 2007

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE